UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEAN CHERY,

    Plaintiff,

v.	Case No. 8:11-cv-2538-T-24 TGW

DANIEL BARNARD, ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on two motions: (1) Defendant Daniel Barnard's Motion to Dismiss (Doc. No. 34) and (2) Defendant Polk County Sheriff's Office's Motion to Dismiss (Doc. No. 33). Plaintiff opposes these motions. (Doc. No. 40). The Court held a hearing on these motions on February 9, 2012. Thereafter, the Court issued an order in which it informed the parties that it was converting these motions to dismiss into motions for summary judgment and allowing them an opportunity to submit any additional materials or evidence that they wanted the Court to consider, including supplemental memorandums. (Doc. No. 49). Defendants Barnard and the Polk County Sheriff's Office filed supplemental materials (Doc. No. 50, 51, 54); however, Plaintiff did not submit anything further. The Court issued an order reminding Plaintiff that he was given an opportunity to submit additional materials for the Court's consideration, but he chose not to file anything in response. (Doc. No. 55). Accordingly, these motions are ripe for review.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

Plaintiff Jean Chery was arrested by Defendant Daniel Barnard, a police officer employed by Defendant Haines City ("City"), based on a warrant for someone else who had the same name as Plaintiff. Thereafter, Plaintiff filed suit against Barnard, the City, and Defendant Polk County Sheriff's Office ("PCSO").

Plaintiff was advised that the State of New York had issued a warrant for a person with the same name as him, and he was told to go to the nearest police station to have his fingerprints taken for comparison. Plaintiff did not follow the instructions to go to the police station to clear the matter up. Instead, on August 26, 2008, while on his lunch break as a school bus driver, Plaintiff approached Barnard at a grocery store. (Doc. No. 54, ¶ 4). Plaintiff asked Barnard how he could clear his name, and Barnard took Plaintiff's identification and contacted Janet Wilson at Haines City Dispatch regarding the warrant.[1] (Doc. No. 54, ¶ 9, 10; Doc. No. 51, ¶ 5).

---

[1] On August 26, 2008, the City's officers did not have a computer or other equipment in their patrol cars to perform on-site identification verification, background checks, fingerprints, or to determine whether there were any outstanding warrants for an individual. Officers would

Specifically, Barnard told Wilson that he was with Jean Chery, a black male that was born on 6/7/1963. (Doc. No. 51, ¶ 6). Wilson ran Plaintiff's information through the FCIC/NCIC database. (Doc. No. 51, ¶ 8). According to the FCIC/NCIC database, there was an outstanding warrant from New York for a black male named Jean Chery that was born on 7/6/1963. (Doc. No. 51, ¶ 8). The FCIC/NCIC database did not provide a Social Security number or Driver's License information for the Jean Chery sought in the warrant, nor did it provide Jean Chery's middle name or picture. (Doc. No. 51, ¶ 9). Wilson informed Barnard that there was an outstanding warrant from New York for a black male named Jean Chery that was born on 7/6/1963. (Doc. No. 51, ¶ 10; Doc. No. 54, ¶ 11).

There was a discrepancy between the birth dates of Plaintiff and the Jean Chery sought in the warrant (the month and day were transposed), and Barnard asked Wilson to confirm the warrant information and to confirm that New York would extradite Plaintiff pursuant to the warrant. (Doc. No. 54, ¶ 14; Doc. No. 51, ¶ 11). Dispatch confirmed the warrant information and that New York would extradite Plaintiff pursuant to the warrant. (Doc. No. 51, ¶ 12). Wilson advised Barnard that New York police had asked that Plaintiff be held until his identity could be confirmed by fingerprint. (Doc. No. 51, ¶ 13; Doc. No. 54, ¶ 16). As a result of this information, Barnard arrested Plaintiff based on the outstanding New York warrant. (Doc. No. 54, ¶ 18).

---

contact Haines City Dispatch by police radio to have police dispatchers perform computer searches regarding outstanding warrants through state and national databases, including the Florida Crime Information Center ("FCIC") and the National Crime Information Center ("NCIC"). Dispatchers would retrieve, analyze, and convey information regarding outstanding warrants to the officers via police radio or telephone. (Doc. No. 51, ¶ 7; Doc. No. 54, ¶ 8-9, 22-24).

Barnard took Plaintiff to the City's police department to be booked and processed. (Doc. No. 54, ¶ 19). Thereafter, Barnard took Plaintiff to the Polk County jail, and they arrived at the jail at approximately 4:30 p.m. on August 26, 2008. (Doc. No. 54, ¶ 20, 21).

At 2:30 p.m. on August 27, 2008, the PCSO submitted a request to New York law enforcement to fax the fingerprints of the Jean Chery sought in the warrant so that the PCSO could compare them to Plaintiff's fingerprints. (Doc. No. 50, ¶ 5). The PCSO received the faxed fingerprints from New York law enforcement at 6:38 p.m., and a fingerprint comparison was immediately done at 6:40 p.m. (Doc. No. 50, ¶ 5). After the fingerprint comparison showed that Plaintiff was not the person sought in the New York warrant, the process for releasing Plaintiff began. (Doc. No. 50, ¶ 6). Plaintiff was released at 9:45 p.m. on August 27, 2008, after being detained at the Polk County jail for slightly more than 29 hours. (Doc. No. 50, ¶ 7).

On September 15, 2008, the PCSO submitted a request to the Polk County state court to have Plaintiff's criminal record (as a result of this incident) expunged from their computer system. This request was granted, and Plaintiff's criminal record was expunged on September 17, 2008. However, on January 9, 2009, Plaintiff was terminated from his job as a result of the erroneous arrest and incarceration. The loss of his employment caused Plaintiff significant financial difficulties.

Thereafter, Plaintiff filed the instant lawsuit and asserted three claims. In Count I, Plaintiff asserted a § 1983 false arrest claim against Barnard and the City. In Count II, Plaintiff asserted a § 1983 illegal detention and confinement claim against Barnard, the City, and the PCSO. In Count III, Plaintiff asserted state law claims of false arrest and false imprisonment against Barnard, the City, and the PCSO.

In response, Barnard, the PCSO, and the City filed motions to dismiss. On February 9, 2012, the Court held a hearing on the motions. Thereafter, the Court granted the City and the PCSO's motions to the extent that they sought dismissal of the § 1983 claims asserted against them. (Doc. No. 49). As such, only the state law claims remain against the City and the PCSO.[2] (Doc. No. 49).

Additionally, the Court converted Barnard's motion to dismiss, as well as the PCSO's motion to dismiss the state law false imprisonment claim, into motions for summary judgment. (Doc. No. 49). The Court gave Barnard, the PCSO, and Plaintiff an opportunity to submit any additional materials or evidence that they wanted the Court to consider. (Doc. No. 49).

### III.  Motions for Summary Judgment

Barnard moves for summary judgment as to all three claims asserted against him, and the PCSO moves for summary judgment as to the state law false imprisonment claim. As explained below, the Court finds that Barnard is entitled to summary judgment on the two § 1983 claims, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims asserted against all three defendants in Count III.

Barnard argues that summary judgment on the § 1983 claims in appropriate, because: (1) Plaintiff cannot show a constitutional violation, which is a necessary element of his § 1983 claims; and (2) he is entitled to qualified immunity. The Court agrees.

#### A.  § 1983 Claim for Mistaken Arrest

A § 1983 claim based on a mistaken arrest pursuant to a valid warrant is asserted

---

[2]The Court also dismissed the state law false arrest claim asserted against the PCSO, because Plaintiff did not allege that the PCSO was involved in Plaintiff's arrest.

pursuant to the Fourth Amendment's right to be free from unreasonable seizures. Chapman v. City of Atlanta, Georgia, 192 Fed. Appx. 922, 924 (11th Cir. 2006). In order to determine whether Plaintiff's arrest violated his constitutional right, the Court must examine the totality of the circumstances surrounding the arrest to see whether the arrest was made pursuant to a reasonable mistake. See Rodriguez v. Farrell, 280 F.3d 1341, 1347 (11th Cir. 2002). When the police have a valid warrant to arrest one party, but the police reasonably mistake the second party for the first party, the mistaken arrest of the second party is a valid arrest and cannot support a § 1983 claim. See id. at 1345-46 (citing Hill v. California, 401 U.S. 797, 802 (1971)).

Plaintiff was arrested based on a warrant for a person with his same name. Plaintiff does not challenge the validity of the warrant as to the "real" Jean Chery for whom the warrant was issued; instead, he argues that there was no valid warrant to arrest him. Plaintiff, however, misunderstands the focus of the Court's inquiry, which is whether it was reasonable for Barnard to mistake Plaintiff for the Jean Chery sought in the warrant.

The Court concludes, as a matter of law, that it was reasonable for Barnard to mistake Plaintiff for the Jean Chery sought in the warrant. Both Plaintiff and the Jean Chery sought in the warrant were black males of the same age and that had the same name. Furthermore, their birth dates were almost identical (the month and day were transposed). Given the striking similarities between the information available to Barnard about the Jean Chery sought in the New York warrant and the information provided by Plaintiff, it was reasonable for Barnard to mistakenly arrest Plaintiff pursuant to the warrant.[3] See Rodriguez, 280 F.3d at 1347 (finding

---

[3]In fact, courts have found mistaken arrests to be reasonable when glaring differences exist, such as the person being arrested being of a different race than the person sought in the warrant. See Chapman, 192 Fed. Appx. at 924 (finding that the arrest of the plaintiff, who was

that the mistaken arrest of the plaintiff, who had the same name, gender, birth year, and race as the person sought in a valid warrant, was due to a reasonable mistake, despite the fact that the person sought in the warrant was five inches shorter than the plaintiff); <u>Ainsworth v. City of Tampa</u>, 2011 WL 1791291, at *6-7 (M.D. Fla. May 10, 2011)(finding that the mistaken arrest of the plaintiff, who had the same name, gender, birth year, and race as the person sought in a valid warrant, was due to a reasonable mistake).

Accordingly, the Court finds that Plaintiff's mistaken arrest did not amount to a constitutional violation. <u>See</u> <u>Rodriguez</u>, 280 F.3d at 1349. As such, Plaintiff's § 1983 false arrest claim fails, and Barnard is entitled to summary judgment on the claim.[4]

Alternatively, if Plaintiff's arrest was not due to a reasonable mistake, the Court finds that Barnard is entitled to qualified immunity as to this claim. This is because it was not clearly established that misidentifying and arresting a person with the same name, gender, birth year, and race as the person sought in a valid warrant violated the law. <u>See</u> <u>id.</u> at 1350.

---

white, was due to a reasonable mistake, despite the fact that the person sought in the warrant was black); <u>Robinson v. City of Atlanta</u>, 2007 WL 1858407, at *4 (N.D. Ga. June 26, 2007)(finding that the arrest of the plaintiff, who was white, was due to a reasonable mistake, despite the fact that the person sought in the warrant was black and had a different first name).

[4]The Court notes that Plaintiff made vague allegations in his amended complaint that implied that he may have been arrested based on a warrant for an Indian male or a white female. However, the Court asked Plaintiff at the hearing to clarify his allegations, and he stated that he did not know what information Barnard had at the time that Barnard arrested him. Furthermore, when the Court converted the instant motions into motions for summary judgment, the Court gave Plaintiff an opportunity to provide the Court with further information or evidence to support his claims and/or to refute Defendants' proffered evidence. Plaintiff failed to submit any additional evidence or to file a brief disputing the facts drawn from the evidence submitted by Barnard and the PCSO. As such, the Court disregards the allegations in Plaintiff's amended complaint to the extent that they conflict with the evidence submitted in connection with the pending motions.

### B. § 1983 Claim Based on the Subsequent Confinement

Plaintiff's § 1983 claim based on his confinement after the mistaken arrest is asserted pursuant to the Fourteenth Amendment's protection against deprivations of liberty without due process, because Plaintiff is challenging his prolonged detention caused by the delay in confirming his identity. See Baker v. McCollan, 443 U.S. 137, 142 (1979). As explained below, the Court finds that Plaintiff's subsequent confinement did not amount to a constitutional violation.

In Baker, the Supreme Court stated that detention pursuant to a valid warrant, but in the face of repeated protests of innocence, does not necessarily deprive a person of liberty without due process. See id. at 144-45. This is because arresting officers and those responsible for maintaining the custody of detainees are not constitutionally required to investigate every claim of innocence based on mistaken identity. See id. at 145-46. As a result, the Baker Court found that the plaintiff, who was mistakenly arrested pursuant to a valid warrant and detained for three days over a holiday weekend, could not show a due process deprivation based on his prolonged confinement. See id. at 145.

Based on Baker and this Court's conclusion that Plaintiff's mistaken arrest did not amount to a constitutional violation, the Court finds that Plaintiff's subsequent confinement for slightly more than 29 hours was not a due process violation. The evidence shows that a comparison of the fingerprints of Plaintiff and the person sought in the warrant was done quickly, and thereafter, Plaintiff was released. As such, Plaintiff's § 1983 claim due to his confinement fails, and Barnard is entitled to summary judgment on this claim.

**IV. Conclusion**

    Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Barnard's Motion to Dismiss (Doc. No. 34), which the Court converted into a motion for summary judgment, is **GRANTED TO THE EXTENT** that he seeks summary judgment on Counts I and II.

(2)     The Clerk is directed to enter judgment in favor of Defendants Barnard, the City, and the PCSO as to Counts I and II.

(3)     Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims asserted against Defendants Barnard, the City, and the PCSO in Count III, and as such, the Court declines to consider the motions for summary judgment as to these claims and dismisses the claims without prejudice.

(4)     The Clerk is directed to close this case.

    **DONE AND ORDERED** at Tampa, Florida, this 8th day of March, 2012.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge